# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                      **Case No. 09-CR-189**

**JOHN LANCOR**
        **Defendant.**

## SENTENCING MEMORANDUM

After recovering a .45 caliber pistol in a shooting, law enforcement traced the firearm back to defendant John Lancor, the purchaser. Defendant admitted that he traded the .45, as well as several other firearms, for crack cocaine, and the government charged him with possessing a firearm as an unlawful user of controlled substances, contrary to 18 U.S.C. § 922(g)(3). He pleaded guilty to the offense, and I set the case for sentencing.

In imposing sentence, the district court must first calculate the advisory sentencing guideline range, then determine the actual sentence on consideration of all of the factors set forth in 18 U.S.C. § 3553(a). See Gall v. United States, 552 U.S. 38, 49-50 (2007); United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008). This memorandum sets forth written reasons for my sentencing determinations.

## I. GUIDELINES

Defendant's pre-sentence report ("PSR") set a base offense level of 14 under U.S.S.G. § 2K2.1(a)(6) because defendant was a "prohibited person" at the time he committed the offense, added enhancements of 2 levels because the offense involved between three and seven firearms, § 2K2.1(b)(1)(A), and 4 levels under because defendant traded firearms for

cocaine, § 2K2.1(b)(6),[1] then subtracted 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 17. Coupled with defendant's criminal history category of I, level 17 produced an imprisonment range of 24-30 months. Neither side objected to these calculations, which I found correct and adopted accordingly.

## II.  SECTION 3553(a)

### A.  Sentencing Factors

Section 3553(a) requires the sentencing court to consider:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the advisory guideline range;

(5)  any pertinent policy statements issued by the Sentencing Commission;

(6)  the need to avoid unwarranted sentence disparities; and

---

[1] Section 2K2.1(b)(6) provides: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels." See United States v. Olivera, 145 Fed. Appx. 686, 687 (1st Cir. 2005) (applying this enhancement where the defendant traded a gun for drugs).

2

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing, which are just punishment, deterrence, protection of the public and rehabilitation of the defendant. While the court must give the guidelines respectful consideration in making this determination, it may not presume that the guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009); Rita v. United States, 551 U.S. 338, 351 (2007), or place "any thumb on the scale" favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). Rather, the court must make an independent determination as to an appropriate sentence, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties. See Gall, 552 U.S. at 49-50.

**B. Analysis**

    **1. The Offense**

On May 26, 2009, Milwaukee police recovered a .45 caliber pistol in a shooting, and a trace of the gun showed that it was purchased by defendant. The following day, ATF agents interviewed defendant, and he stated that he purchased the gun in 2006 and recently sold it. He indicated that in late March or early April he contacted a man named James Fogle (later to become a co-defendant in this case), and Fogle agreed to "middle" the sale of the gun. Defendant took the gun to his wife's house, then Fogle came over and took the gun outside to meet the buyer.

Later that evening, defendant called the officers back and stated that he had traded

seven firearms for crack cocaine over the previous several weeks, and that Fogle participated in each of these transactions. (He later clarified that he traded six firearms and that Fogle was only involved in the first two transactions.) He further admitted that he had been using cocaine regularly for the past year and a half and lasted smoked on May 16 or 17. Finally, he stated that he traded the .45 on or about April 4, 2009, in exchange for 6 grams of rock cocaine. He said that he shared some of the cocaine with Fogle, but he and his wife smoked most of it. On June 1, 2009, officers returned to defendant's residence, and he advised that he had been able to retrieve five of the firearms, which he agreed to abandon to the ATF.

### 2. The Defendant

Defendant was twenty-eight years old, with no prior record and an otherwise positive background. He graduated high school with a GPA of 3.65, took some classes at Northeast Wisconsin Technical College, then obtained a State of Wisconsin four year apprenticeship certification in carpentry. For the past ten years, he worked as a carpenter with H.J. Martin and Sons. He also had a supportive family.

Substance abuse caused defendant to vary from this otherwise law-abiding life. Defendant started drinking as a teen, which escalated after he turned twenty-one. More seriously, he started using cocaine in his mid-twenties, which also escalated to the point where he started trading guns for drugs. He described himself as a functioning addict up to May 2009, when he stopped using. After an evaluation by an intervention specialist, he enrolled in treatment at St. Agnes hospital and, according to the letter from his counselor, had been actively involved in group and individual sessions. The counselor reported that defendant accepted responsibility, was honest about his struggles and open to feedback, and seemed sincere in his desire to remain sober. His sobriety was confirmed by negative screens on pre-

4

Case 2:09-cr-00189-LA    Filed 04/20/10    Page 4 of 7    Document 53

trial release in this case; he complied with his other conditions as well.

Defendant married Nichole Lancor (also a co-defendant in this case) in 2003, and it did not appear to have been a healthy relationship for either, as they used drugs together. They divorced in 2009, and it appeared that defendant's current girlfriend, who was studying to be a drug and alcohol counselor, was a better influence. The marriage produced a son, age seven, and defendant had primary placement.

### 3. The Guidelines and Purposes of Sentencing

The guidelines called for a term of 24-30 months, but for several reasons I found that range greater than necessary to satisfy the purposes of sentencing. Although selling or trading guns under these circumstances is very serious (and generally calls for a prison sentence), there were four significant and unusual factors in this case, which supported a sentence served in the community.

First, after the initial visit by police in this case, defendant, on his own initiative and without specific request, recovered five of the firearms he had sold, turning them over to law enforcement. This demonstrated that he recognized the danger he had created, and that he was willing to take measures to mitigate that danger. To the extent that punishment should be commensurate with the harm caused, these actions convinced me that a lesser sentence would suffice to recognize the seriousness of the offense, promote respect for the law and provide just punishment. I also noted that the seriousness of the offense was mitigated somewhat because it was prompted by defendant's drug addiction, rather than other motives. So long as he remained sober, I found him unlikely to repeat this conduct.

This led to the second factor, defendant's progress in drug treatment. Based on that progress, I did not see him as posing a risk of re-offending or a danger to the public. He

5

remained active in treatment and all screens were negative. Continued supervision in the community sufficed to ensure that he maintained sobriety. I also noted in this regard his lack of any prior record.

Third, defendant had been awarded primary placement of his son, based on his progress in treatment. Defendant had developed a good relationship with the boy, who was likely harmed by years of his parents' drug use; he was apparently in counseling now, too. To take the boy's father from him now would likely cause significant trauma; because it was not necessary to do that to protect the public, I imposed a sentence served in the community to avoid this harm. I also noted that defendant was the sole financial supporter for his son, and it was not clear where he would go if defendant was imprisoned.

Fourth, defendant extensively debriefed with the government after his plea, identifying his drug suppliers. He decided not to pro-actively cooperate due to concerns for his son and the possibility of relapse. Although the government declined to file a sentence reduction motion under U.S.S.G. § 5K1.1, I considered defendant's efforts as a sign of positive character development under § 3553(a). See United States v. Knox, 573 F.3d 441, 453 (7th Cir. 2009). These efforts also served to further sever his ties with drug users and suppliers.

Therefore, while I generally agreed with the Commission that prison is called for when a defendant transfers guns in this fashion, under the unusual circumstances of this case, I found a sentence of probation, with some community confinement to provide a measure of punishment and structure, sufficient but not greater than necessary to satisfy all of the purposes of sentencing. Because the sentence was based on the particular facts of the case, it created no unwarranted disparity.

6

### III. CONCLUSION

Therefore, I placed on defendant on probation for a period of 4 years. I selected a longer term to ensure monitoring and treatment. As conditions, I required defendant to participate in drug testing and treatment; perform ten hours of community service work per year, in lieu of a fine; and to comply with the conditions of home confinement for a period not to exceed 180 consecutive days. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 20th day of April, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge